UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LAMAR SIMPSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Civil Case No. 4:22-CV-02743 |
| | § | |
| MARIA HUGHES, BROOKE DAVIS and MARTHA WALKER, | § § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Lamar Simpson was, at all times relevant to this case, an inmate in the Texas Department of Criminal Justice. He filed a civil rights complaint alleging that the Defendants refused or delayed medical treatment for a detached retina, and improperly handled his grievance concerning the alleged lack of medical care. (Dkt. No. 1 at 4, 6, 8-13). He seeks monetary relief. (*Id.* at 4).

The Defendants have filed a Motion for Summary Judgment. (Dkt. No. 17). Simpson has not responded to the Motion. For the following reasons, the Motion for Summary Judgment is **GRANTED**, and the Complaint, (Dkt. No. 1), is **DISMISSED WITH PREJUDICE**.

### I. BACKGROUND

Simpson entered TDCJ in 2012 and was released in 2022. (Dkt. No. 17-1 at 3). On February 10, 2015, Simpson was evaluated at Hospital Galveston ("HG") for decreased vision and blurriness in his left eye. (*Id.*). Out of concern that scarring surrounding

lesions on the retina could cause complications related to surgery, doctors decided to observe and follow up as necessary rather than perform surgery on the retina. (*Id.*).

In May 2021, Simpson suffered a bee sting to his left eye. He was seen in the unit clinic two days later for complaints of blurry vision. (*Id.*). Clinic staff examined the eye and administered an antihistamine injection and Benadryl. (*Id.*). Simpson was released with instructions to submit a sick call request ("SCR") if his symptoms persisted. (*Id.*).

On June 9, 2021, Simpson submitted an SCR complaining of loss of vision in his left eye and was seen the same day by Defendant Dr. Hughes. (*Id.* at 4). Dr. Hughes examined the eye and found a scratch on the cornea, as well as redness and a mild yellow secretion. (*Id.*). Dr. Hughes prescribed antibiotic eye drops. (*Id.* at 3–4).

On June 18, 2021, Simpson submitted another SCR because he still had no vision in his left eye. (*Id.* at 4). He was seen by Defendant Nurse Walker the same day. Nurse Walker examined the eye and made an appointment for Simpson with ophthalmology. (*Id.*).

On July 1, 2021, Simpson was diagnosed with chronic retinal detachment at HG and was referred to the HG retinal clinic for evaluation. (*Id.*). He was seen at the retinal clinic on July 7, 2021, and surgery was recommended. Simpson was admitted for the surgery from August 4-6, 2021. (*Id.*). He was seen at the HG clinic for post-surgical follow-up on August 11, and was seen two days later by Dr. Hughes. (*Id.* at 4-5.)

Over the next two months, Simpson was seen at both the unit clinic and HG and, in October 2023, doctors at the HG clinic determined that Simpson's retina re-detached and recommended surgery. (*Id.* at 5). Simpson was again admitted to HG for surgery on

December 21, 2021, but the surgery was postponed when Simpson tested positive for Covid. (*Id.* at 5).

On January 10, 2022, after Simpson completed his Covid isolation, Dr. Hughes saw Simpson for complaints about his eye and headaches. (*Id.*). Dr. Hughes focused on Simpson's untreated hypertension, noting that headaches are not a symptom of retinal detachment, and directed clinic staff to contact HG to reschedule Simpson's surgery. (*Id.* at 5–6).

Throughout January and February 2022, Simpson submitted several SCRs complaining about his eye and about delays in scheduling his surgery. (*Id.* at 6). Simpson was admitted to HG for his second surgery from March 22-24, 2022. (*Id.* at 7). He was seen for a follow-up on March 30. (*Id.*).

On April 16, 2022, Simpson submitted an SCR complaining of cloudy vision. (*Id.*). Four days later, he was again seen at the HG clinic and was again diagnosed with retinal detachment with a recommendation for more surgery. (*Id.*). The surgery took place the following day. (*Id.*).

On August 13, 2022, Simpson submitted an SCR concerning removal of silicone oil in his eye. (*Id.* at 8). He was seen by Dr. Hughes three days later. (*Id.*). Dr. Hughes referred Simpson to HG, but the referral was deleted because Simpson was released from TDCJ custody. (*Id.*).

## II.   STANDARD OF REVIEW

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

3

P. 56(a). "A material fact is one that might affect the outcome of the suit under governing law," and "a fact issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 611 (5th Cir. 2018) (quotations omitted). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion," and identifying the record evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2253, 91 L.Ed.2d 265 (1986). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).

If the movant meets this burden, the nonmovant must then come forward with specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The nonmovant must "go beyond the pleadings and by [the nonmovant's] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015). "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 378 (5th Cir. 2019). The nonmovant's burden "will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quoting *Little*, 37 F.3d at

1075). But the district court must view the evidence in the light most favorable to the nonmovant. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

### III. ANALYSIS

#### A. ELEVENTH AMENDMENT IMMUNITY

Simpson does not specify whether he sues the Defendants in their individual or official capacities. To the extent that he sues them in their official capacities, his claims are barred by the Eleventh Amendment.

"[I]n the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984). A suit for damages against a state official in his official capacity is not a suit against the individual, but against the state. *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 361, 116 L.Ed.2d 301 (1991). The Defendants are entitled to summary judgment on all official capacity claims.

#### B. DEFENDANT DAVIS

To prevail on his claim, Simpson must demonstrate that each defendant was personally involved in the alleged constitutional violation, or that the defendant committed wrongful acts that were causally connected to a constitutional deprivation. *See Jones v. Lowndes County, Mississippi*, 678 F.3d 344, 349 (5th Cir. 2012). Simpson does not allege any involvement by Defendant Davis in his medical treatment or lack thereof.

To the extent that he sues Davis for her handling of his grievance, this claim is also unavailing. The Fifth Circuit has held that an inmate does not have a protected liberty

interest in the processing of grievances. *See Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005). Davis's alleged mishandling of Simpson's grievance, therefore, does not implicate Simpson's constitutional rights and does not give rise to a claim for relief.

### C.   DELIBERATE INDIFFERENCE

Simpson contends that the alleged conduct by Defendants Dr. Hughes and Nurse Walker violated his Eighth Amendment right to be free from cruel and unusual punishment. To rise to the level of a constitutional violation, prison officials must exhibit deliberate indifference to a prisoner's serious medical needs. *Farmer v. Brennan*, 511 U.S. 825, 828, 114 S.Ct. 1970, 1974, 128 L.Ed.2d 811 (1994). "Deliberate indifference" is more than mere negligence, but "something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835, 114 S.Ct. at 1978. Rather, deliberate indifference requires that the defendant be subjectively aware of a substantial risk of serious harm to the inmate and recklessly disregard that risk. *Id.* at 829, 836, 114 S.Ct. at 1974, 1978.

> Deliberate indifference is an extremely high standard to meet . . . [T]he plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.

*Domino v. Texas Dep't. of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).

### 1.   Dr. Hughes

Defendants present evidence showing that Dr. Hughes evaluated Simpson six times between May 25, 2021, and his release from TDCJ custody. (Dkt. No. 17-1 at 3–8).

6

Hughes provided medically appropriate care each time, including at least two referrals for eye surgery. (*See id.*).

Simpson's complaint that Dr. Hughes improperly attributed his symptoms to hypertension is also contradicted by the record. Dr. Hughes explained to Simpson that symptoms of retinal detachment include painless vision disturbances such as floaters, light flashes, and darkening vision. (*Id.*). Simpson's complaints of headaches were not consistent with retinal detachment, but were consistent with hypertension, and Simpson's blood pressure at the time, 180/92 is, in fact, Hypertension Stage 2. (*Id.*). Dr. Hughes's diagnosis was, therefore, correct, and treatment for hypertension was appropriate. The evidence shows that Dr. Hughes provided appropriate treatment and was not deliberately indifferent to Simpson's medical needs.

### 2. Nurse Walker

The record shows that Nurse Walker evaluated Simpson six times, four of them related to Simpson's eye issues. (*Id.* at 9). She either referred Simpson to HG Ophthalmology or confirmed his ophthalmology appointment during each of the four evaluations. (*Id.*). There is no evidence to support Simpson's claim that Walker delayed treatment for Simpson's eye problems or that she otherwise provided substandard care.

## IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment, (Dkt. No. 17), and this case is **DISMISSED WITH PREJUDICE**. The Court will enter a separate final judgment.

It is SO ORDERED.

Signed on January 24, 2024.

                                                 **DREW B. TIPTON**
                                      **UNITED STATES DISTRICT JUDGE**